**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

BIOMET, INC.,

        Plaintiff,

    v.                                    Civil Action No. 3:13-CV-176

BONUTTI SKELETAL
INNOVATIONS, LLC.,

        Defendant.

**OPINION AND ORDER**

Plaintiff, Biomet, Inc., filed a Complaint for Declaratory Judgment against Defendant,
Bonutti Skeletal Innovations, LLC. Plaintiff desires this Court to declare that the manufacture,
use, or sale of its products does not infringe on Bonutti Skeletal's Patents[1].

Defendant has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE 20)
under Federal Rule of Civil Procedure 12(b)(1), arguing that, at the time the complaint was filed,
there was no case or controversy as defined by the Declaratory Judgment Act, 28 U.S.C. §
2201(a). In the alternative, Defendant is requesting this Court to transfer the case to the Eastern
District of Texas in the interest of justice and convenience. *See* 28 U.S.C. § 1404(a).

The Court finds that there was an actual case or controversy at the time the complaint was
filed. Accordingly, the Court denies Defendant's Motion to Dismiss (DE 21). The Court also

---

[1] U.S. Patent Nos. 5,921,986; 6,099,531; 6,423,063; 6,638,279; 6,702,821; 7,087,073; 7,104,996; 7,708,740;
7,806,896; 7,806,897; 7,828,852; 7,931,690; 8,133,229; and 8,147,514.

denies Defendant's request to transfer; it finds that, on balance, the factors in 28 U.S.C. §

1404(a) favor keeping the case in this district.

### A.  Relevant Background

Plaintiff, Biomet, is an Indiana corporation that designs, manufactures, and markets products

that are used in the musculoskeletal medical industry. (Compl. ¶ 1.) Defendant, Bonutti Skeletal

Innovation, holds the rights to patents of medical products that are similar in design to the

products that Plaintiff manufactures and sells.

In 2006, Plaintiff entered into an agreement to license 45 patents from MarcTec, LLC., the

original owner of the patents that are now at issue. The MarcTec agreement required Plaintiff to

pay an upfront fee, maintain minimum yearly payments, and pay royalties. (Def. Br., Rauker

Dec. ¶ 6.) The rights under the MarcTec agreement were assigned to Defendant in August 2012.

(*Id*. at ¶ 7.)

In June 2012, Acacia Research Group (ARG), Defendant's parent company, contacted

Plaintiff about a new licensing agreement. Shortly afterwards, Plaintiff and ARG began

negotiating the terms of the licensing agreement. The bargaining process included the signing of

a Non-Disclosure Agreement (NDA) on August 13, 2012. The NDA's purpose was to facilitate

the licensing of patents to avoid litigation. (Def. Br., Rauker Dec., Ex. 1 ¶ 1.) But there is

nothing in the NDA that speaks to the parties being prevented from filing a lawsuit against each

other at any point, for any reason. (Pl. Opp., Mauch Dec. ¶ 20.)

The negotiations continued with several emails and phone conferences between the parties.

In September 2012, Defendant advised Plaintiff that it had filed "multiple patent infringement

suits involving at least some of the patents-in-suit against a number of medical device

manufacturers." (Rauker Dec ¶ 14.) Defendants further advised Plaintiff that they believed some

of Plaintiff's products were infringing upon Defendant's patents, including suture anchors, uni-

condylar knees, and other instruments and surgical methods. (*Id.*)

In January 2012, Defendant sent Plaintiff, at Plaintiff's request, a chart that identified

Defendant's patents and the specific products of Plaintiff that Defendant believed were

infringing upon Defendant's patents. (Def. Br., Rauker Dec. ¶ 16; Pl. Opp., Mauch Dec. ¶ 25.)

Shortly afterwards, Defendant sent Plaintiff a list of Defendant's lawsuits against Plaintiff's

competitors. (Pl. Opp., Mauch Dec. ¶ 26.)

After these exchanges, the parties entered into final negotiations. On March 1, 2013,

Defendant sent Plaintiff an email with a final offer to license the patent portfolio. (Pl. Opp.,

Mauch Dec. ¶ 29.) That email stated in part: "we request that you accept our offer or make a

counter offer by Friday March 8 . . . I would personally like to see a deal occur with [Plaintiff],

but must emphasize the urgency of this matter." (*Id.*) On March 8, 2013, Plaintiff responded to

the offer stating it thought that a license was unnecessary and that Plaintiff would not be making

a counter-offer. (Pl. Opp., Mauch Dec. ¶ 31.) Two hours after this email was sent, the complaint

was filed in this action. (Def. Br., Rauker Dec. ¶ 22.)

**B.  Subject Matter Jurisdiction under the Declaratory Judgment Act**

   **(1)** *Legal Standard*

Plaintiff asserts that this Court has subject matter jurisdiction under the Declaratory

Judgment Act. The Declaratory Judgment Act limits jurisdiction to actual cases or controversies.

28 U.S.C. § 2201(a). The Supreme Court, in *MedImmune, Inc. v. Genentech, Inc.*, set the

standard for when an actual case or controversy exists in a declaratory judgment action:

> Our decisions have required that the dispute be "be definite and concrete, touching the legal relations having adverse legal interests" and that it be "real and substantial" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

549 U.S. 118, 138 (2007) (*quoting Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241)

(1937)).

    To decide if a dispute has reached a definite and concrete controversy, courts must look to all

the circumstances. *Id.* at 771. However, a ripe declaratory judgment claim does not arise simply

because a party perceives there to be a risk of patent infringement "without some affirmative act

by the patentee." *SanDisk v. STMicroElectornics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

But the affirmative act does not need to be directly addressed at the Plaintiff. The case or

controversy boiling point is where the "patentee takes a position that puts the declaratory

judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that

which he claims a right to do." *Id.*  When a patent holder informs a declaratory judgment

Plaintiff that it believes it has rights against that party, and that party informs the patent holder

that it believes that it has a right to engage in that activity without a patent, declaratory judgment

jurisdiction exists.

    In the context of a Federal Rule of Civil Procedure 12(b)(1) Motion to Dismiss, the Court

must take all the allegations in the complaint as true in deciding if there is a real controversy.

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

**(2) Analysis**

Under all of the circumstances involved in this case, the Court finds that there is a substantial controversy that warrants jurisdiction under the Declaratory Judgment Act. The case has reached a point where this Court can rule on a real dispute, as opposed to one based on a hypothetical state of facts. The parties have adverse legal interests, and the Court should not force Plaintiff to wait for Defendant to file a lawsuit to declare their rights.

The Defendant even admits that it could have filed a lawsuit against Plaintiff at any time. (Def. Br. 15.) Defendant provided Plaintiff with a list of the patents upon which it thought Plaintiff was infringing. (Compl. ¶ 17.)  Defendant has a history of asserting their patent rights in lawsuits against many of Plaintiff's competitors. And Defendant was put on notice that the negotiations had reached an impasse and should have known that Plaintiff had the right to seek a declaratory judgment.

**C.  Discretionary Dismissal**

Having found that this Court has jurisdiction to hear this case, the Court still retains some discretion to dismiss the claim. "[D]istrict Courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). However, dismissal is rarely proper when hearing the case would serve the purposes of the Declaratory Judgment Act. *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008) (*citing Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004). The purpose of the Declaratory Judgment Act is to give the allegedly infringing party relief from

the "choice between growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Micron*, 518 F.3d at 902 (*citing Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005)).

The Court finds that hearing this case would serve the purposes of the Declaratory Judgment Act. There is an actual and concrete controversy that this Court could resolve. Hearing the case would remove any uncertainty regarding the parties' legal responsibilities without further delay. The Court finds that there is no sound reason for this court to exercise its discretion and dismiss this case.

**D.  Transfer**

Title 28 U.S.C. § 1404(a) states that: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The statute gives district courts great discretion and "is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

Transfer analysis requires a separate inquiry into (1) the proper venue in both districts; (2) the convenience of the parties and the witnesses; and (3) the interest of justice. *Id*. The Court will not conduct a venue analysis, because the Court finds that venue is proper in this district and is declining to transfer the case to the Eastern District of Texas. Furthermore, the Court finds this district to be more convenient and just for the parties and the witnesses.

**(1)** *The Convenience of the Witnesses and the Parties Does Not Favor Transfer*

The convenience factors include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *Schumacher v. Principle Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009). The Court finds that, on balance, these factors weigh in favor of keeping the case in this district.

The general rule is that the forum of the first-filed case is preferred absent a showing of bad faith. *See Micron Tech.*, 518 F.3d at 902 (*citing Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir.1993). In this case, there is no evidence to support the proposition that Plaintiff intentionally misled Defendant to wrestle away its choice of forum.

The Court agrees with the principle that "[i]t is quite possible for two parties to simultaneously consider nonlitigious settlement of a dispute, while at the same time maintaining an awareness that neither settlement is improbable or that litigation is equally likely." *SanDisk*, 480 F.3d at 1381 (*quoting IMS Health, Inc. v. Vality Tech, Inc.*, 59 F. Supp. 2d 454, 461 (E.D. Pa. 1999)). The evidence and the allegations in the complaint support this principle. Plaintiff and Defendant were involved in negotiations in an attempt to avoid litigation; but at the same time, they must have been aware of the threat of litigation at any moment. When negotiations had ceased, Plaintiff was free to file this declaratory judgment action. The Court gives great weight to Plaintiff's choice of forum, but it is only one factor to be considered among many. *See Club Assistance Program, Inc. v. Zukerman*, 598 F. Supp. 734 (N.D. Ill. 1984).

The other factors, though, also favor keeping the case in this district. The situs of material events largely occurred in this district, as Plaintiff is manufacturing the potentially infringing

products here. It would be more convenient for both parties to access the sources of proof,

largely, the physical evidence that is located at the Warsaw manufacturing facility. The only

third-party witness that has been identified is Dr. Bonutti, who lives substantially closer to this

district than the Eastern District of Texas.  The Court finds that both parties will be equally

inconvenienced by the litigation.

On balance, the convenience factors favor keeping the case in the Northern District of

Indiana.

**(2)** *The Interest of Justice Does Not Favor Transfer*

Courts must also look to the "interest of justice" in reviewing a motion to transfer. It is a

separate element that "relates to the efficient administration of the court system." *Research*

*Automation, Inc. v. Schrader-Bridgeport Int'l., Inc.*, 626 F.3d 973 (7th Cir. 2010) (*citing Van*

*Dusen v. Barrack*, 376 U.S. 612, 626–627 (1964)). The Court takes into account: (1) the

speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; and (3)

each location's relationship to the controversy. *Id*.

The Court finds the dispositive factor to be that the Northern District of Indiana has a greater

interest in the outcome of the dispute because neither district has an advantage in the speediness

of trial or the familiarity with relevant law. Each district has about the same average time from

filing to disposition. (Def. Br., Rothery Dec., Ex. 1.) And the case will involve both patent and

Indiana law. Since the Court finds that Plaintiff has much stronger ties to this district than

Defendant has to the Eastern District of Texas, it would be in the interest of justice to keep the

case in the Northern District of Indiana.

**E.  Conclusion**

For those reasons, Defendant's Motion to Dismiss, or in the alternative, to transfer or stay

(DE 20) is **DENIED.**

SO ORDERED on July 24, 2013.


      s/ Joseph S. Van Bokkelen
**JOSEPH S. VAN BOKKELEN**
**UNITED STATES DISTRICT JUDGE**